**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | CR423-090 |
| | ) | |
| VICTOR R. MCMILLAR, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Defendant Victor R. McMillar faces two counts of Possession of a Firearm and Ammunition by a Prohibited Person pursuant to 18 U.S.C. § 922(g)(1). *See* doc. 3 (Indictment). The Government alleges that McMillar possessed a Smith and Wesson ("S&W") .40 caliber pistol and Browning brand .40 caliber shells during a November 3, 2018 homicide. *See* doc. 49 at 1-2 (Bill of Particulars). Two days later, on November 5, 2018, the same S&W .40 caliber pistol was recovered at another homicide scene, along with Federal brand .40 caliber shells. *Id.* at 2. The Government anticipates "that certain witnesses will place [McMillar] at the location of the shooting on November 3, 2018." *Id.* at 4. "Other witnesses will establish a possible motive for [McMillar] to have

1

murdered JJ," the November 5th homicide victim, "to prevent JJ from identifying [McMillar] as the shooter on November 3." *Id.* The Government proposes that McMillar's alleged involvement in the two shootings demonstrates that he knowingly possessed both a firearm and ammunition, despite his prior felony convictions. *Id.* at 2-3.

There has been extensive pre-trial motions practice in this case. Currently pending are: McMillar's Motion to Participate in Voir Dire, doc. 30; Motion for Pre-Trial Disclosure of Grand Jury Testimony, doc. 31; Motion for Preservation of Government's Rough Notes, doc. 32; Motion for Early Disclosure of Jencks Act Material, doc. 34; Motion for Bill of Particulars, doc. 35; and Motion for a List of Government Witnesses, doc. 38. Additionally, the Government filed a Notice of Intention to Use Evidence of Similar Crimes Pursuant to Rule 404(b), doc. 43, which McMillar opposes, doc. 62. The Court construes McMillar's opposition to the potential Rule 404(b) evidence as a motion *in limine*. On February 26, 2024, the Court held a motions hearing on the five motions identified above. *See* doc. 77 (Minute Entry); *see also* doc. 63 (Noticing Hearing on Motions). The motions are fully briefed and ripe for disposition.

At the hearing, counsel represented that they had reached

agreements as to the Motion to Participate in Voir Dire, doc. 30, the Motion for Pre-Trial Disclosure of Grand Jury Testimony, doc. 31, and the Motion for Early Disclosure of Jencks Act Material, doc. 34. These motions are therefore **DISMISSED as moot**. Docs. 30, 31, & 34. Defense counsel also represented that the Government's Bill of Particulars, doc. 49, satisfied the Motion for Bill of Particulars, doc. 35, except in that the Bill of Particulars did not name the witnesses that would place McMillar at particular locations or establish his motive. *See generally* doc. 77 (Minute Entry).[1] Defendant's Motion for Bill of Particulars is **DISMISSED as moot** on all issues except for whether the Government must name its anticipated witnesses in the Bill of Particulars. Doc. 35, in part.

The only remaining motions under advisement from the February 26, 2024 hearing are McMillar's Motion for Preservation of Government's Rough Notes, doc. 32; Motion for Bill of Particulars (as to identifying witnesses), doc. 35, in part; Motion for a List of Government Witnesses, doc. 38; and the motion *in limine* requesting that the United States not

---

[1] McMillar did not request a list of witnesses in his Motion for Bill of Particulars, *see* doc. 35, and raised the lack of a witness list as a failing of the Bill of Particulars for the first time at the motions hearing.

be allowed to introduce evidence of prior bad acts pursuant to Rule 404(b) of the Federal Rules of Evidence, doc. 62.  The Court will address each of these motions in turn.

## I.  GOVERNMENT'S ROUGH NOTES

Turning first to McMillar's Motion for Preservation of Government's Rough Notes, doc. 32, Local Criminal Rule 16C(b) requires "the attorney for the Government [to] advise law enforcement agencies involved in the investigation and prosecution to preserve all contemporaneous notes, memoranda, statements, reports, surveillance logs, recordings, and other documents memorializing matters relevant to the criminal case."  McMillar moves "for an Order from this Court requiring the government to preserve all rough notes taken by its representatives," agents, and any government witnesses.  Doc. 32 at 1. This includes any state and local law enforcement officers who may have produced rough notes during the investigation.[2]  The Government counters that it would be difficult, and likely futile, to ask all of the Savanah Police Department ("SPD") officers involved in the

_____

[2]  The Government indicated that it has already requested that the federal agents involved in the investigation–namely, Alcohol, Tobacco, and Firearms ("ATF") agents–preserve their rough notes.  Doc. 48 at 2.

4

investigation–some of whom are no longer with SPD–to preserve rough notes from five years ago. *See* doc. 48 at 2. But Local Criminal Rule 16C(b) does not apply only when it would be easy for the Government to advise all law enforcement agencies involved in an investigation to preserve rough notes or when such requests are likely to yield rough notes. The Government has an affirmative obligation to advise all federal, state, and local law enforcement agencies involved in the investigation and prosecution to preserve all contemporaneous notes, including rough notes, in all criminal cases in this Court. *See* LR Crim. 16C(b). McMillar's Motion for Preservation of Government's Rough Notes is **GRANTED**. Doc. 32. The Court **DIRECTS** counsel for the United States to advise *all* law enforcement agencies involved in McMillar's investigation to preserve the rough notes relevant to this criminal case.

## II.    SUFFICIENCY OF THE BILL OF PARTICULARS

Defense counsel conceded that the Government's Bill of Particulars, doc. 49, satisfied the Motion for Bill of Particulars, doc. 35, in all respects except one: it did not identify the witnesses who would place McMillar at particular locations or testify as to his motive. *See generally* doc. 77

(Minute Entry); *see also* doc. 49 at 4.  McMillar may not bypass Rule 16(a)(2)'s prohibition of "the discovery or inspection of statements made by prospective government witnesses" by requesting a bill of particulars pursuant to Rule 7(f).  *See* Fed. R. Crim. P. 16(a)(2); *see also United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986).  "[A] defendant has no right to obtain a list of witnesses by simply calling his request a 'bill of particulars.'"  *Anderson*, 799 F.2d at 1442 (citing *United States v. Pena*, 542 F.2d 292, 294 (5th Cir. 1976)[3]).  To the extent McMillar's Motion for a Bill of Particulars is a request for a witness list, the Motion is **DENIED**. Doc. 35, in part.

## III.  EARLY PRODUCTION OF THE WITNESS LIST

McMillar also moves for the Court to order the Government to produce a witness list.  Doc. 38.  The Government has agreed to give McMillar its witness list five calendar days before the trial, but defense counsel represented at the motions hearing that she needs the witness list twenty days in advance.  *See generally* doc. 77 (Minute Entry). McMillar raises two arguments for why early production of the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Government's witness list would be useful.  First, it would give counsel time to conduct witness interviews.  *See* doc. 38 at 1-2.  Second, because McMillar is indigent, *see* doc. 17, he must move for the issuance of witness subpoenas pursuant to Federal Rule of Criminal Procedure Rule 17(b) at least fourteen days in advance of trial.  *See* doc. 71 at 4.  If McMillar does not know who the Government will call, he may inadvertently waste court resources by subpoenaing witnesses the Government already intends to call or, worse, fail to subpoena a witness the Government ultimately does not call by proceeding under the assumption that the Government *would* call that witness.

"In non-capital cases such as this, a defendant is generally not entitled to a list of government witnesses." *United States v. Brown*, 2022 WL 16753120, at *1 (S.D. Ga. Nov. 7, 2022); *see also United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983) ("A criminal defendant has no absolute right to a list of a government's witnesses in advance of the trial.").  The Court has the discretion to require the production of witness lists in advance of trial. *See United States v. Hancock*, 441 F.2d 1285, 1286 (5th Cir. 1971); *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981).  But McMillar has not alleged any unique circumstances

7

which warrant the early production of the Government's witness list. Additional time to conduct witness interviews in advance of trial would be useful in *any* case.  *All* indigent defendants face logistical challenges surrounding the issuances of trial subpoenas.  Furthermore, McMillar was previously tried in state court on charges relating to the November 3rd and November 5th homicides, and the Government represents that "[m]uch of the anticipated evidence at trial will replicate that presented in the state trial."  Doc. 49 at 2.  In other words, McMillar already has some idea of what witnesses may be called and what they may testify to.[4] McMillar has not demonstrated that the early production of the Government's witness list would "*materially* aid[] his defense."  *Colson*, 662 F.2d at 1392 (emphasis added).  McMillar's Motion for a List of Government Witnesses is **DENIED**.[5]  Doc. 38.

---

[4] The Government also represents that it has requested transcripts of the state court proceedings and will provide copies to defense counsel.  *See* doc. 49 at 2 n.3.

[5]  At the motions hearing, counsel for the United States indicated that he would inform defense counsel of any witnesses the Government would *not* call and would also be willing to provide defense counsel with a tentative, non-binding list of potential government witnesses prior to her deadline to move for issuances of subpoenas.  The Court encourages counsel for McMillar and the United States to continue working together on this issue.

## IV.   RULE 404(b) NOTICE

Finally, McMillar opposes the Government's First Notice of Intention to Use Evidence of Similar Crimes Pursuant to Rule 404(b),[6] doc. 43, which the Court construes as a motion *in limine*.  Doc. 62.  The Government intends to introduce evidence of an October 30, 2018 shooting and of the November 3, 2018 and November 5, 2018 homicides. *See generally* doc. 43.  While the Government filed a Rule 404(b) Notice for this evidence, it did so only out of an abundance of caution; the Government does not believe that Rule 404(b) applies to this evidence, as "the facts surrounding [the] three shooting scenes are inextricably intertwined to the facts related to the charged offenses."  *Id.* at 1.  In other words, the noticed acts are "intrinsic" to the charged offences.  *Id.* at 8.  McMillar argues that October 30th shooting and two homicides are "extrinsic acts" and should be excluded under Rule 404(b).  *See* doc. 62 at 1-2.

Rule 404(b) of the Federal Rules of Evidence "does not apply when the prior bad acts are intrinsic to the charged offense."  *United States v.*

---

[6] The Government filed a Second Notice of Intention to Use Evidence of Other Acts Pursuant to Rule 404(b) on February 16, 2024, *see* doc. 74, which the Court did not hear arguments on at the February 26th motions hearing.  *See* doc. 63 (setting February 26, 2024 motions hearing).

*Jeanty*, 358 F. App'x 55, 58 (11th Cir. 2009).  Evidence of prior bad acts is intrinsic to the charged offense if the prior bad acts: (1) "arose out of the same transaction or series of transactions as the charged offense," (2) are "necessary to complete the story of the charged crime," or (3) are "inextricably intertwined with the evidence regarding the charged offenses."  *United States v. Ford*, 784 F.3d 1386, 1393 (11th Cir. 2015) (internal quotations omitted).  If evidence "'pertain[s] to the chain of events explaining the context, motive and set-up of the crime'" and is "'linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury,'" it is admissible.  *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).

A. <u>October 30, 2018 Shooting</u>

The Government wishes to introduce evidence of a shooting with no victims, no suspects, and no arrests.  *See* doc. 43 at 1-2.  On October 30, 2018, SPD officers responded to shots fired near 521 West 60th Street.  *Id.* at 1.  They recovered approximately forty-eight spent cartridge casings, including fifteen .40 caliber casings.  *Id.*  "No victims were

located and no suspects were located." *Id.* To date, SPD and the Chatham County District Attorney's Office have not arrested or charged anyone in connection with the incident. *Id.* at 1-2. However, the fifteen .40 caliber cartridges have since been traced to the S&W .40 caliber pistol used in the November 3rd homicide, found at the November 5th homicide scene, and referred to in Counts 1 and 2. *Id.* The October 30th shooting occurred a quarter of a mile away from and four days before the November 3rd homicide. *Id.* at 2. The Government argues that the October 30th shooting is therefore "relevant to establish the location of the firearm in Savannah just prior to and at the time of the defendant's possession." *Id.* at 10. "Tracking the firearm's location and use is relevant to tracking he defendant's location and his knowing possession of the firearm." *Id.*

The October 30th shooting is not "an integral and natural part of an account of the crime," nor is it "necessary to complete the story of the crime for the jury." *Jeanty*, 358 F.App'x at 58. Because the Government has not convincingly demonstrated–or even explicitly alleged[7]–that

---

[7] *See generally* doc. 43 (First Notice of Intention to use Evidence of Other Acts Pursuant to Rule 404(b)); doc. 49 (Bill of Particulars); doc. 65 (Response to Defendant's Opposition to the United States' Notice under F.R.E. 404(b)); doc. 74 (Second Notice of Intention to Use Evidence of Other Acts Pursuant to Rule 404(b)).

McMillar possessed the S&W .40 caliber pistol during the October 30th shooting, the October 30th shooting also does not appear to be a part of the same "series of transactions" as the charged possessions. *Id.* At most, it demonstrates that the gun was generally in the vicinity of the November 3rd homicide on October 30th. While, as discussed below, the October 30th shooting may be "linked in time and circumstances with the charged crime" in that the shooting involved the same firearm and occurred within the same week as the alleged possessions in Counts 1 and 2, the mere fact that *someone* fired the gun a few days before McMillar allegedly possessed the firearm does not explain anything about "the context, motive, and set-up of the charged crime." *See Williford*, 764 F.2d at 1499 (holding that *evidence pertaining to the context, motive, and set-up of a crime* is admissible if linked in time and circumstances with the charged crime). The October 30, 2018 shooting is therefore extrinsic to the charged offenses and within the scope of Rule 404(b).

Extrinsic evidence of other crimes, wrongs, or acts is admissible when: (1) it is relevant to an issue other than the defendant's character; (2) sufficient evidence is presented that would allow a jury to find that

the defendant committed the extrinsic act; and (3) its probative value is not substantially outweighed by the potential for undue prejudice. *See United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008). McMillar argues that none of the above criteria are satisfied, but objects most strenuously on the grounds that the Government has not presented sufficient evidence of his involvement in the October 30, 2018 shooting. *See* doc. 62 at 2-3.

The Court agrees that the Government has not presented sufficient evidence to tie McMillar to the October 30th shooting. The Government only points to the following facts to as evidence that a jury could use to conclude that McMillar committed the October 30, 2018 shooting:

(1) the October 30th shooting took place four days before and a quarter of a mile away from the November 3rd homicide;

(2) the October 30th shooting and November 3rd homicide were perpetrated using the same firearm;

(3) that same firearm was found tucked into the waistband of the November 5th homicide victim; and

(4) McMillar's DNA, along with the DNA of two others, was found on the firearm.

Doc. 65 at 11.  Implicit in the Government's reliance on these four facts is its allegation that McMillar was involved in the November 3rd and November 5th homicides.  *See generally* doc. 43; doc. 49 (Bill of Particulars).  Essentially, the Government argues that a jury could find McMillar committed the October 30th shooting because he allegedly possessed the same firearm in a nearby location four days later and he was one of at least three people to touch the firearm on or before November 5, 2018.  The Court disagrees.  This showing is not sufficient. No jury could conclude beyond a reasonable doubt that McMillar perpetrated the October 30, 2018 shooting on these facts.

Even if the Government had presented sufficient evidence for a jury to conclude that McMillar perpetrated the October 30th shooting, the probative value of the shooting is substantially outweighed by the potential for undue prejudice.  The Government wishes to present evidence from the October 30th shooting "to establish the location of the firearm in Savannah just prior to and at the time of the defendant's possession." *See* doc. 43 at 10.  But the Government has more compelling evidence as to where the gun was and when; forensic experts have matched the spent cartridge casings at the November 3rd homicide scene

to the S&W .40 caliber pistol found at the November 5th homicide scene. *Id.* at 3.  There is no question as to where the firearm was on November 3, 2018, and November 5, 2018.  Tying McMillar to what appears to be an unrelated shooting to demonstrate that the gun was near the location of November 3rd homicide days earlier is not more probative than it is prejudicial when the Government already has evidence of the gun's precise location on the dates alleged in Counts 1 and 2.

Because there is not sufficient evidence that would allow a jury to find that McMillar committed the October 30, 2018 shooting and introducing the October 30th shooting to establish the gun's location prior to the charged offenses is not more probative than it is prejudicial,[8] evidence of the October 30, 2018 shooting should be excluded.  The Court **GRANTS** McMillar's motion *in limine* as to the October 30th shooting, pursuant to Rule 404(b).  Doc. 63, in part.

### B. November 3, 2018 and November 5, 2018 Homicides

The Government alleges that McMillar committed the November 3, 2018 homicide using the S&W .40 caliber pistol and Browning brand .40

---

[8]  The Court need not reach whether the October 30th shooting is relevant to something other than McMillar's character.  *See Ellisor*, 522 F.3d at 1267 ("To be admissible under Rule 404(b), evidence of prior bad acts must withstand a *three-part* test…" (emphasis added)).

15

caliber shells named in Count 1. *See* doc. 43 at 9. As previously mentioned, McMillar's DNA was found on the firearm. *See* doc. 49 at 2. "[C]ertain witnesses will place the defendant at the location of the shooting on November 3, 2018" and other witnesses will suggest that JJ, the victim of the November 5, 2018 shooting, was going to identify McMillar as the shooter on November 3rd. *Id.* at 4. If McMillar used the gun to commit the November 3rd homicide, the Government argues, he necessarily possessed the gun and the ammunition described in Count 1. "Stated otherwise, evidence of the shooting[] *is* the evidence of McMillar's knowing possession." Doc. 65 at 12. The Government argues that the November 3rd homicide is therefore part of the same transactions or series of transaction as the charged offenses, necessary to complete the story of the crime, and "inextricably intertwined" with the charged offenses. Doc. 43 at 8-10. The Government also acknowledged that McMillar "could have possessed the firearm and ammunition without committing the homicide[]," but maintained that the November 3rd homicide would still be "inextricably intertwined" with the charges because "it is impossible to introduce the evidence related to Count[] One

. . . without some discussion of how and where the evidence was seized."
*Id.* at 10.

The Government disclosed at the motions hearing that a GBI
ballistics expert had concluded that the firearm used in the November 5,
2018 homicide was *not* the S&W .40 caliber pistol described in Count 2.[9]
Even though the firearm described in Counts 1 and 2 was not used in the
second homicide, the Government reiterates that it cannot separate how
the firearm was found and why SPD swabbed the firearm for DNA from
the November 5, 2018 homicide.  *See e.g.,* doc. 65 at 7.  It therefore
maintains that the November 5th homicide is "inextricably intertwined"
with the charged offenses and necessary to tell the story of the crime,
since the gun McMillar is charged with possessing was found at the
scene.  *See* doc. 43 at 10.

"Evidence is inextricably intertwined if it is an 'integral and natural
part of the witness's accounts of the circumstances surrounding the
offenses for which the defendant was indicated.'"  *United States v. Troya*,
733 F.3d 1125, 1131 (11th Cir. 2013 (quoting *United States v. Foster*, 889

---

[9]  The Government initially believed that the Federal brand .40 caliber shells found
at the November 5, 2018 homicide scene were fired from the S&W .40 caliber pistol
named in Count 2.  *See* doc. 49 at 2.

F.2d 1049, 1053 (11th Cir. 1989).  This includes testimony which explains how the defendant came to be a suspect in the charged crime.  For example, in *United States v. Flowers*, Flowers was identified as a suspect in a robbery-homicide investigation.  531 F. App'x 975, 977 (11th Cir. 2013).  Though someone else eventually confessed and was convicted of the robbery-homicide, investigators found a firearm and ammunition during a search of Flowers's home.  *Id.* at 977-78.  Flowers, a convicted felon, admitted to investigators that he had handled the gun.  *Id.* at 977. He also admitted that he had planned to rob the store where the robbery-homicide occurred, though he apparently did not go through with his plans.  *Id.*  He was subsequently charged with possession of a firearm by a convicted felon.  *Id.* at 978.  Evidence that Flowers was initially a suspect in the robbery-homicide and confessed that he planned to rob the store was not barred as "extrinsic" evidence under Rule 404(b) "because it was inextricably intertwined with the facts of the firearm-possession case and was needed to explain basic facts, such as why the police searched Flowers's home and interviewed him."  *Id.* at 984.

The firearm-possession charges against McMillar stem from the investigation into the November 3, 2018 and November 5, 2018

homicides.  The firearm McMillar is charged with possessing was used in the November 3rd homicide and was found at the scene of the November 5th homicide.  *See* doc. 43 at 2.  The Government alleges that McMillar possessed the S&W .40 caliber pistol in connection with the two homicides and indicates that "[m]uch of the anticipated evidence at trial will replicate that presented in the state" homicide case.  *See id.* at 8-9; doc. 49 at 2.  Evidence of the November 3rd and November 5th homicides are therefore "inextricably intertwined with the facts of the firearm-possession case and [are] needed to explain basic facts, such as why the police" swabbed the firearm for DNA, interviewed McMillar, and sought his cell phone records.  *See Flowers*, 531 F. App'x at 984; *see* doc. 65 at 7; doc. 49 at 2-3.  The Court **DENIES** McMillar's motion *in limine* as to the November 3rd and November 5th homicides.  Doc. 63, in part.

## V.   CONCLUSION

McMillar's Motion to Participate in Voir Dire, doc. 30, the Motion for Pre-Trial Disclosure of Grand Jury Testimony, doc. 31, and the Motion for Early Disclosure of Jencks Act Material, doc. 34, are **DISMISSED as moot**.  McMillar's Motion for Preservation of Government's Rough Notes, doc. 32, is **GRANTED**. His Motion for a Bill of Particulars, doc. 35, is

**DISMISSED as moot in part** and **DENIED in part**.   McMillar's Motion for a List of Government Witnesses is **DENIED**.   Doc. 38.   His motion *in limine*, filed as a response in opposition to the Government's Notice of Intention to Introduce Evidence Pursuant to Rule 404(b), doc. 43, is **GRANTED in part** and **DENIED in part**.   Doc. 62.   The Government may introduce evidence of the November 3, 2018 and November 5, 2018 homicides, but evidence of the October 30, 2018 shooting is barred under Rule 404(b) of the Federal Rules of Evidence.

    **SO ORDERED**, this 28th day of March, 2024.


_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA