# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

UNITED STATES OF AMERICA,   )
                                )
                                )
v.                              )              CR423-090
                                )
VICTOR R. MCMILLAR,        )
                                )
            Defendant.      )

## ORDER AND REPORT AND RECOMMENDATION

A Smith and Wesson ("S&W") .40 caliber pistol and Browning brand .40 caliber ammunition were used in a November 3, 2018 homicide. *See* doc. 49 at 1-2 (Bill of Particulars). Two days later, on November 5, 2018, the same S&W .40 caliber pistol and Federal brand .40 caliber shells were recovered at another homicide scene. *Id*. Defendant Victor R. McMillar was tried for the November 3, 2018 and November 5, 2018 homicides (and other crimes related to the shootings, including unlawful possession of a firearm) in Chatham County Superior Court in October 2023; he was acquitted. *See* doc. 72 at 1; doc. 81 at 3.

McMillar has since been charged in this court with two counts of possession of a firearm and ammunition by a prohibited person, in

1

violation of 18 U.S.C. § 922(g)(1). *See* doc. 3 (Indictment). The Government alleges McMillar possessed the S&W .40 caliber pistol, Browning brand .40 caliber ammunition, and Federal brand .40 caliber ammunition connected to the November 3 and November 5, 2018 homicides. *See id.*; *see generally* doc. 49; *see also* doc. 81 at 3 ("McMillar is charged in the instant case with unlawfully possessing subject firearm as well as the ammunition found at the November 3 (count 1) and November 5 (count 2) shooting scenes . . . .").

McMillar moves to dismiss the indictment against him, citing unjustified pre-indictment delay, vindictive prosecution, lack of specificity, and multiplicity. Doc. 72. The Government opposes. Doc. 81. The Motion to Dismiss the Indictment is ripe for disposition. McMillar also seeks to exclude evidence disclosed by the Government in a Rule 404(b) Notice, doc. 74. *See* doc. 91. The Court construed McMillar's "response" to the Rule 404(b) Notice as a motion *in limine* and directed the Government to respond accordingly. *See* doc. 92. The Government responded, doc. 93, and the construed motion *in limine* is also ripe for disposition.

# I.   MOTION TO DISMISS

## A. <u>Delay</u>

McMillar first moves to dismiss the indictment against him on the grounds that the five-year delay between the conduct underlying the charged offenses and the indictment violates the Fifth Amendment's Due Process Clause.  Doc. 72 at 2-3; *see also* doc. 3 (Indictment filed November 1, 2023, for conduct on November 3 and 5, 2018).   Even when an indictment is brought within the statute of limitations, pre-indictment delay may violate the Due Process Clause if: (1) the delay has caused the defendant actual substantial prejudice and (2) the Government intentionally delayed bringing the indictment to gain some advantage over the defendant.  *See United States v. Marion*, 404 U.S. 307, 323-24 (1971); *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996). McMillar bears the heavy burden of showing that dismissal is appropriate. *Foxman*, 87 F.3d at 1222 .  He must demonstrate *both* that he has suffered actual, tangible prejudice *and* that the Government's delay was deliberate and designed to gain a tactical advantage.  *See id.* (indicating this is a two-part test); *see also Marion*, 404 U.S. at 326 (holding that claims of prejudice cannot be speculative or premature).

McMillar argues that the five-year pre-indictment delay prejudices him because "[m]emories are now infirm," and the passage of time "hampers the defense in arguing the presence of his DNA on any item was the result of the process of accidental, indirect, or secondary transfer."[1] *See* doc. 72 at 2-3. He also argues that the five-year delay is prejudicial in and of itself. *Id.* at 3. Finally, he argues that the Government has an unfair advantage because McMillar has already been charged with unlawful possession of a firearm on these facts in state court and the Government can "try the case differently than the first time, using strategies that worked and avoiding the ones that didn't." *Id.* at 3. McMillar does not acknowledge the second prong of the test.

McMillar has not shown actual prejudice or that the Government intentionally delayed bringing the indictment to gain a tactical advance. *See Marion*, 404 U.S. at 323-26; *Foxman*, 87 F.3d at 1222-23. McMillar's claims regarding infirm memories and the difficulty explaining DNA transfer after this delay are, at most, the kinds of prejudice inherent in any pre-trial delay. Potential prejudices inherent in any delay—"that

---

[1] McMillar also asserts that the delay is prejudicial because it is unlikely that the amount of available DNA evidence will have become more abundant. *See* doc. 72 at 2. The Court fails to see how this prejudices him.

memories will dim, witnesses become inaccessible, and evidence be lost"–
are insufficient to demonstrate that McMillar "cannot receive a fair trial
and to therefore justify the dismissal of the indictment." *Marion*, 404
U.S. at 326; *see also United States v. McGough*, 510 F.2d 598, 604 (5th
Cir. 1975)[2] ("[W]hen preindictment delay is asserted, actual prejudice
and not merely the real possibility of prejudice inherent in any extended
delay, [cit.], is a necessary element which must be shown before the
restraints of the due process clause will be applied to bar a prosecution
because of delay." (internal citation and quotations omitted)).
Additionally, because McMillar does not articulate whose memories are
infirm, what kinds of difficulties exist in explaining the DNA transfer, or
how those infirmities and difficulties prejudice him, these arguments are
premature. *Marion*, 404 U.S. at 326. "Events of the trial may
demonstrate actual prejudice, but at the present time," McMillar is only
*speculating* that he may be prejudiced. *Id.* Furthermore, his argument
that the length of the delay itself is prejudicial has been squarely rejected
by the Eleventh Circuit; "prejudice will not be presumed because of a

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

lengthy delay," *Stoner v. Graddick*, 751 F.2d 1535, 1544 (11th Cir. 1985) (holding that prejudice would not be presumed even after a 19-year delay). Finally, while McMillar asserts that the Government has gained a tactical advantage by waiting until after his state trial to indict him, he fails to assert that the Government *intentionally* or *deliberately* waited five years to indict to gain this advantage. *See* doc. 72 at 2-3; *see Marion*, 404 U.S. at 323-26; *Foxman*, 87 F.3d at 1222-23.

For the reasons set forth above, McMillar has failed to establish either actual prejudice or an intentional delay by the Government to gain a tactical advantage. *See Marion*, 404 U.S. at 323-26. He has not established that his motion to dismiss should be dismissed due to pre-indictment delay. Doc. 72 at 2-3

### B. Vindictive Prosecution

Next, McMillar moves to dismiss the charges against him for vindictive prosecution. Doc. 72 at 3-4. A vindictive prosecution is a prosecution pursued, as the name suggests, out of vindictiveness. "Vindictiveness in this context means the desire to punish a person for exercising his rights." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).

Imposing a penalty on a criminal defendant for exercising his rights violates due process. *See Blackledge v. Perry*, 417 U.S. 21, 25-27 (1974).

A presumption of vindictiveness arises when the facts suggest "a realistic likelihood of 'vindictiveness.'" *Goodwin*, 457 U.S. at 384 (citing *Blackledge*, 417 U.S. at 27). Actual vindictiveness "'essentially requires a showing that the prosecution's justification [for the indictment] is pretextual.'" *Barritt v. Sec'y, Fla. Dept. of Corrs.*, 968 F.3d 1246, 1253 (11th Cir. 2020) (quoting *United States v. Kendrick*, 682 F.3d 974, 982 (11th Cir. 2012)). McMillar does not explicitly state which theory–a presumption of vindictiveness or actual vindictiveness–he proceeds under, though his argument appears to be geared towards establishing a presumption of vindictiveness. *See* doc. 72 at 4. He does not present direct evidence that "the prosecution's justification is pretextual." *Barritt*, 968 F.3d at 1253. Instead, he points out that he was charged with virtually the same crime–unlawful possession of a firearm during the November 2018 shootings–in state court; that a Special Assistant United States Attorney ("SAUSA") with "direct ties to the Chatham County District Attorney's Office" brought this case; and that "[t]his U.S. Attorney's office is now seeking disqualification because of these ties to

the Superior Court case." Doc. 72 at 4. He exercised his "right to a trial by jury [in state court] and prevailed." *Id.* The "natural conclusion" to draw from these facts, McMillar argues, is that the federal case against him is "a vindicative charging decision made after an acquittal at trial" in state court. *Id.*

"[F]ederal courts repeatedly have rejected the idea that federal prosecution, after state proceedings, constitutes vindictive federal prosecution." *United States v. Raymer*, 941 F.2d 1031, 1041 (10th Cir. 1991). While the Eleventh Circuit has not considered the question, other circuits have held that the involvement of a separate sovereign tends to negate a vindictive prosecution claim. *See e.g., United States v. Ng*, 699 F.2d 63, 68 (2d Cir. 1983); *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989); *United States v. Heidecke*, 900 F.2d 1155, 1159-60 (7th Cir. 1990); *United States v. Robinson*, 644 F.2d 1270, 1273 (9th Cir. 1981). Generally, a federal prosecution following a state prosecution does not violate the defendant's due process rights when federal prosecutors "'exert their own discretion as to whether or not to prosecute,'" even if state authorities "refer" the case to the federal government. *See United*

*States v. Baker*, 2023 WL 2535882, at \*4 (6th Cir. Mar. 16, 2023) (quoting *United States v. Allen*, 954 F.2d 1160, 1166 (6th Cir. 1992)).

McMillar attempts to tie the charging attorney and the United States Attorney's Office ("USAO") for the Southern District of Georgia to the Chatham County District Attorney's Office and McMillar's state prosecution. He implies that the Chatham County District Attorney's Office, not the United States, was behind the federal prosecution–or, that the federal prosecutors in this case did not "exert their own discretion as to whether or not to prosecute." *Baker*, 2023 WL 2535882, at \*4 (internal quotations omitted); *see* doc. 72 at 4.

Makeia R. Jonese, a SAUSA with the USAO for the Southern District of Georgia, was lead counsel at the time of the indictment. *See* doc. 3 at 3. While the City of Savannah funds Ms. Jonese's SAUSA position, and in that role she prosecutes violent-crime cases in which the City is the originating or lead agency or has a significant interest, "[t]he final decision-making authority on all cases remains with the United States Attorney and designated management within the USAO." *See* doc. 81 at 13-14 (citing the Memorandum of Understanding Between The United States Attorney's Office, Southern District of Georgia and The

Mayor and Aldermen of the City of Savannah, available at `https://agenda.savannahga.gov/content/files/mou-usao-sdga-city-of-savannah-draft-july-25-2022_.pdf` (last accessed May 17, 2024) (internal quotations omitted)).  That the original lead counsel's position in the federal government is funded by the City of Savannah does not mean she had direct ties to the Chatham County District Attorney's Office or that the Chatham County District Attorney's Office drove the decision to indict McMillar in federal court.  There is no indication that the United States Attorney did not exercise her independent, final decision-making authority in this case.  *Cf.* doc. 3 at 3 (bearing the signature of the United States Attorney).  Additionally, McMillar's claim that the USAO for the Southern District of Georgia recused itself "because of these ties to the Superior Court case" is unfounded.  *See* doc. 72 at 4.  The USAO never provided a basis for its recusal beyond stating that the General Counsel's Office "f[ou]nd a conflict."  *See* doc. 25 (Minute Entry).

McMillar has not articulated facts that suggest "a realistic likelihood of 'vindictiveness,'" *Goodwin*, 457 U.S. at 384, or show "that the prosecution's justification [for the indictment] is pretextual," *Barritt*,

968 F.3d at 1253. It appears only that the United States, a separate and independent sovereign, "exerted [its] own discretion" to exercise its authority to indict McMillar for a federal crime. *See Baker*, 2023 WL 2535882, at *4. McMillar has failed to establish either a presumption of vindictiveness or actual vindictiveness. Accordingly, McMillar's vindictive prosecution claim fails. Doc. 72 at 3-4

### C. Lack of Specificity

McMillar also argues that the indictment does not include sufficient allegations to apprise him of the charges against him. Doc. 72 at 4-6. Rule 7 of the Federal Rules of Criminal Procedure provides that the "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. Pro. 7(c)(1).

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal quotations omitted).

McMillar does not actually articulate how the indictment lacks

11

specificity.  *See* doc. 72 at 5-6.  The relevant portion of his brief only includes the conclusory accusation that the counts in the indictment "do not include sufficient factual allegations to apprise him of the charges." *Id.* at 5.  Later, in the section of his motion addressing multiplicity, he complains that indictment does not list a specific serial number for the S&W .40 caliber pistol he is charged with possessing.  *Id.* at 6.

McMillar is charged with two counts of possession of a firearm and ammunition by a prohibited person under 18 U.S.C. § 922(g)(1).  *See* doc. 3.  The essential elements under § 922(g)(1) are: (1) the defendant knew he was a convicted felon; (2) the defendant knew he was in possession of a firearm; and (3) the firearm affected or traveled in interstate commerce. *See Rehaif v. United States*, 588 U.S. 225, 237 (2019); *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004).  The indictment includes all three essential elements.  *See* doc. 3 at 1-2; *see also Steele*, 178 F.3d at 1233.  It also specifies where and when McMillar is accused of possessing a firearm and ammunition and that the subject firearm is a S&W .40 caliber pistol.  *See* doc. 3 at 1-2.  This is sufficiently specific to notify McMillar of the charges against him and for him to rely on judgment under the indictment as a bar against double jeopardy for any subsequent

prosecution for the same offense. *See Steele*, 178 F.3d at 1233-34.

To the extent McMillar argues that the lack of a serial number hampers his ability to prepare his defense, the Government provided a serial number for the S&W .40 caliber pistol he is charged with possessing in its Bill of Particulars. *See* doc. 49 at 1 (specifying that the S&W .40 caliber pistol in Counts 1 and 2 is a Model SD40VE, serial number HFY8047). The Bill of Particulars also clarifies that the ammunition referred to in Count 1 is Browning brand .40 caliber ammunition and the ammunition referred to in Count 2 is Federal brand .40 caliber ammunition. *Id.* at 2. McMillar has sufficient information to prepare his defense. *See United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985) ("The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a alter prosecution for the same offense.").

The indictment: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same

offense." *Steele*, 178 F.3d at 1233-34; *see also* doc. 3. It is sufficiently specific to apprise McMillar of the charges against him. *See* doc. 72 at 5. McMillar's lack of specificity argument fails. Doc. 72 at 4-6.

D. Multiplicity

Finally, McMillar argues that the charges against him should be dismissed for multiplicity because he is charged with possessing the same "object"–a S&W .40 caliber pistol and ammunition–twice. Doc. 72 at 6; *see also* doc. 3 at 1-2. "An indictment is multiplicitious if it charges a single offense in more than one count." *United States v. Howard*, 918 F.2d 1529, 1532 (11th Cir. 1990). Uninterrupted possession of a firearm is a single offense. *See United States v. Rivera*, 77 F.3d 1348, 1351 (11th Cir. 1996). Simultaneous possession of a firearm and ammunition is also a single offense, but "where a defendant has possessed different weapons at different times or places, the government may treat them as separate units of prosecution and charge multiple accounts." *United States v. Jones*, 601 F.3d 1247, 1259 (11th Cir. 2010).

The Government may present evidence, and the jury may find, that McMillar *separately* possessed the S&W .40 caliber pistol, Browning brand ammunition, and Federal brand ammunition alleged in Counts 1

and 2, or that his possession was not continuous.  *See United States v. Miller*, 156 F. App'x 281, 291 (11th Cir. 2005) (holding that the district court did not err in denying a pre-trial motion to dismiss the indictment as multiplicitious when the district court concluded that "if the government presented evidence that [the defendant] separately possessed weapons and ammunition charged in the indictment he could properly be convicted on each count"); *Rivera*, 77 F.3d at 1351.  As the Government points out, the jury could find that McMillar only possessed the S&W .40 caliber pistol on November 3, 2018, and possessed the Federal brand ammunition on November 5, 2018.  *See* doc. 81 at 18.  If the jury finds that "he possessed a firearm on a separate date from the ammunition, the possession charged is not a continuing course of conduct."  *Jones*, 601 F.3d at 1259.  At the same time, the Government concedes that if the jury finds that McMillar possessed only the S&W .40 caliber pistol on both November 3, 2018, and November 5, 2018, "one of the counts would have to be dismissed as multiplicitious."  Doc. 81 at 18.

Because whether the counts against McMillar are multiplicitious depends on the jury's findings, it is improper to dismiss the indictment for multiplicity at this stage.  *Cf. Miller*, 156 F. App'x at 291.  Therefore,

McMillar's argument that the charges against him should be dismissed for multiplicity fails.  Doc. 72 at 6

E. Conclusion

McMillar fails to establish that this case should be dismissed for unjustified pre-indictment delay, vindictive prosecution, lack of specificity, or multiplicity.  His Motion to Dismiss should be **DENIED**. Doc. 72.

## II.   MOTION IN LIMINE

A. Witness Testimony Regarding Prior Firearms Possessions

Pursuant to Rule 404(b)(3) of the Federal Rules of Evidence, the Government provided notice that it would seek to introduce testimony from a person familiar with McMillar that McMillar possessed firearms on multiple occasions in the months leading up to the charged offense. *See* doc. 74 at 9-12.  In particular, this witness will testify that "prior to November 3, he saw McMillar possess two guns; and that he saw McMillar with a gun every time he saw him." *Id*. at 9.  The witness also saw McMillar on November 3, 2018. *Id*.

Extrinsic evidence of other crimes, wrongs, or acts is admissible when: (1) it is relevant to an issue other than the defendant's character;

(2) sufficient evidence is presented that would allow a jury to find that the defendant committed the extrinsic act by a preponderance of the evidence; and (3) its probative value is not substantially outweighed by the potential for undue prejudice. *See United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008); *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007). Evidence is relevant to an issue other than the defendant's character if it goes to a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b).

First, the Government argues that testimony that McMillar possessed multiple guns on previous occasions goes to McMillar's knowledge and absence of mistake.[3] Doc. 74 at 10-12; *see also* doc. 93 at 4-5. It is well-established within this circuit that "there is a 'logical connection between a convicted felon's knowing possession of a firearm

---

[3] The Government also argues that the witness having seen McMillar with a gun before the November 3, 2018 shooting explains how he was able to identify McMillar on November 3rd and therefore the testimony also goes to McMillar's identity. *See* doc. 74 at 9-10; doc. 93 at 4-5. The Court disagrees. The witness having previously seen McMillar is relevant to explaining how the witness recognized McMillar on November 3rd. The witness having previously seen McMillar with a gun is not. The mere presence of a firearm would not significantly alter someone's ability to identify McMillar. The fact that McMillar may have had a gun during prior encounters has no bearing on whether or how the witness could identify him on November 3, 2018. However, as discussed below, the testimony is admissible for other purposes under Rule 404(b)(2).

at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental).'" *United States v. Perrier*, 619 F. App'x 792, 796 (11th Cir. 2015) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1281 (11th Cir. 2003)); *see also United States v. Oliver*, 653 F. App'x 735, 740 (11th Cir. 2016) (finding that previous possession of a firearm by a convicted felon is evidence that the felon did not accidentally or unknowingly possess the subject firearm); *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005) (same); *United States v. St-Turbain*, 762 F. App'x 933, 935 (11th Cir. 2019) (same); *United States v. Clark*, 693 F. App'x 804, 807 (11th Cir. 2017) (same).   Because McMillar has not stipulated to knowingly and intentionally possessing the subject firearm, "the government may seek to admit evidence of a prior knowing possession of a firearm to prove the *mens rea* element of the offense." *Perrier*, 619 F. App'x at 796 (citing *Taylor*, 417 F.3d at 1182).   The first prong is satisfied.

Second, the Government offers–at this stage–uncontested evidence that McMillar possessed a firearm on more than one occasion leading up to the November 3, 2018 shooting. *See* doc. 74 at 9.  McMillar does not

18

rebut the witness's anticipated testimony; rather his objection is that this particular witness's testimony "is fraught with problems and contradictions." *See* doc. 91 at 1-2. However, at this stage, the Court finds that the uncontroverted testimony that McMillar possessed firearms on prior occasions is sufficient for a jury to potentially conclude by a preponderance of the evidence that McMillar did, on prior occasions, possess a firearm. *See Oliver*, 653 F. App'x at 740-41; *see also Edouard*, 485 F.3d at 1345 (concluding that a jury could have found by a preponderance of the evidence that the defendant committed the extrinsic conduct based on unrebutted testimony); *United States v. Shores*, 966 F.2d 1383, 1386 (11th Cir. 1992) (concluding that there was sufficient evidence for a reasonable jury to conclude that a defendant committed a prior act, despite the lack of detail or corroboration). To the extent that McMillar believes the witness is unreliable, he may expose the witness's testimony's "problems and contradictions" on cross-examination. The second prong is also satisfied.

Third, testimony that McMillar possessed firearms on previous occasions is more probative than prejudicial because the past act is substantially similar and temporally close to the charged offense. Under

the third prong, the Court must carry out "a 'common sense' assessment of all the circumstances surrounding the extrinsic offense, including . . . overall similarity between the extrinsic act and the charged offense[] and temporal remoteness." *Clark*, 693 F. App'x at 807.  Here the charged offense–possession of a firearm by a prohibited person–and the past act–possessing a firearm–are substantially similar.   The Government represents that the witness did not meet McMillar until three months before November 3, 2018, doc. 74 at 9; therefore, all of the instances when he saw McMillar possess a firearm occurred within three months of the shooting and are not temporally remote to the charged offense. Additionally, to ensure that McMillar is not unfairly prejudiced by the proffered evidence, the Court may give a limiting instruction.  *See e.g.*, *St-Turbain*, 762 F. App'x at 936 (finding that instructing the jury "that the evidence [of prior firearms possessions] could not be used to decide whether [the defendant] committed the acts charged in the instant case but only for the limited purpose of deciding whether he had the state of mind necessary to commit the instance offense" sufficiently reduced the risk of unfair prejudice).  As a result, the Court finds that the witness's

testimony is more probative than prejudicial.  *Cf. id.*; *Clark*, 693 F. App'x at 807; *Jernigan*, 341 F.3d at 1282.  The third prong is satisfied.

For the foregoing reasons, the Court should find that testimony that McMillar previously possessed firearms on multiple occasions leading up to November 3, 2018, is admissible under Rule 404(b)(2).  McMillar's motion *in limine* is **DENIED,** as to this evidence.  Doc. 91, in part.

### B. October 20, 2018 Text Message

The Government also plans to introduce evidence of a text message sent from JJ, the victim of the November 5, 2018 homicide, to McMillar.  *See* doc. 49 at 1-2; *see also* doc. 74 at 5-9.  On October 20, 2018, JJ texted McMillar: "Man plz go head and get yo girl tew order da pro meg xd 40."  Doc. 74 at 6.  This was immediately followed with a link to a specific magazine from "gunmagwarehouse.com."  *Id.*  The Government asserts that these messages show JJ asking McMillar to ask McMillar's girlfriend to buy a firearm magazine.  *Id.* at 5.  The magazine was not for the S&W .40 caliber pistol McMillar is charged with possessing.  *See* doc. 74 at 8 ("[T]he magazine JJ sought is not of the type that would fit subject firearm . . .").

McMillar moves to exclude JJ's text on two grounds.[4]  Doc. 91 at 2. First, McMillar argues that the text is inadmissible hearsay.  *Id.*  Second, he argues that even if the text was not hearsay, its probative value is outweighed by its potential prejudicial impact.  *Id.*

      i.  <u>Rule 801</u>

Rule 801 of the Federal Rules of Evidence defines hearsay as an out-of-court, assertive statement offered for the truth of the matter asserted in the statement.  *See* Fed. R. Evid. 801(a), (c).  Hearsay is generally inadmissible.  *See* Fed. R. Evid. 802.  McMillar argues that JJ's text, as an out-of-court statement, is inadmissible hearsay.  Doc. 91 at 2.

However, "out-of-court declarations that are 'more in the nature of an order or a request,' and that, 'to a large degree, [are] not even capable of being true or false,' are . . . not hearsay."  *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (quoting *United States v. Cruz*, 805 F.2d

---

[4] The Government noticed JJ's text as possible Rule 404(b) evidence.  *See* doc. 74.  It is unclear, however, whether Rule 404(b) even applies to the text.  Rule 404(b) applies to evidence of prior bad acts, *see* Fed. R. Evid. 404(b), and this is a text message, not an act, sent by someone other than the defendant, requesting something of someone other than the defendant, that the Government concedes does not implicate any "crime," "bad act," or "wrong," *see* doc. 74 at 7.  Regardless, because McMillar does not move to exclude the text pursuant to Rule 404(b), *see generally* doc. 91, the Court need not address the applicability of Rule 404(b) or the Government's argument that the text is "intrinsic evidence of the crime charged."  *See* doc. 74 at 6.

1464, 1478 (11th Cir. 1986)).  The Government argues that JJ asking

McMillar to "plz go head and get yo girl tew order da pro meg xd 40," doc.

74 at 6, is a request that is not capable of being true or false.  Doc. 93 at

7.  The Court agrees.  The Eleventh Circuit routinely finds that these

kinds of communications asking another person to do something are not

hearsay because they are orders or requests that are incapable of being

true or false.  *See e.g.*, *Cruz*, 805 F.2d at 1477-78 (finding that "bring your

supplier" is more of an order or request than an assertive statement and

is not capable of being true or false); *United States v. Pagan*, 2022 WL

7811971, at *7 (11th Cir. 2022) (finding that messages that "requested

drugs and arranged times to pick up drugs" were orders or requests not

capable of being true or false).  To the extent McMillar argues that JJ's

October 20, 2018 text should be excluded as hearsay, that argument fails.

ii. Rule 403

McMillar also moves to exclude JJ's text because it is more

prejudicial than probative.  Doc. 91 at 2; *see also* Fed. R. Evid. 403.  In

particular, McMillar argues that the mere fact JJ asked McMillar to ask

McMillar's girlfriend to buy a magazine is not probative of McMillar

possessing the subject firearm. *See* doc. 91 at 2. The Government argues that the text message is relevant:

> to show the relationship between JJ and McMillar, the relationship of McMillar's girlfriend to McMillar and JJ, and thus, the relationship between subject firearm and McMillar, and the shared relationship of the parties tends to suggest that McMillar's DNA did not land on subject firearm on accident or unintentionally, rather that he jointly possessed subject firearm with JJ.

Doc. 93 at 9-10. The Government further argues that "the texts are probative evidence of the relationship between JJ and McMillar, McMillar's knowing possession of subject firearm and the lack of mistake in his possession (i.e., McMillar was familiar with firearms, firearms accessories, and firearm operability, and thus his possession of subject firearm was not accidental.)" *Id.* at 10. The Government also offers Internet search history obtained from McMillar's girlfriend's cellphone that shows someone used that phone to search for magazines and, on November 3, 2018, purchase an item which cost around what a magazine might cost from a website that sells firearms accessories. *Id.* at 10-13. The Government does not assert that the item purchased on November 3, 2018, was the specific magazine JJ requested. *See id.* at 12.

As an initial matter, JJ's text must be relevant to be admissible.

*See United States v. McGregor*, 960 F.3d 1319, 1323 (11th Cir. 2020) ("The starting place for evidentiary admissibility is relevance.").  Evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The Government suggests that the text is relevant to the relationship between JJ, McMillar, McMillar's girlfriend, and the firearm McMillar is charged with possessing, and that all of that, in turn, is relevant to showing that McMillar "jointly possessed subject firearm with JJ."  *See* doc. 93 at 8-10.

McMillar jointly possessing the S&W .40 pistol with JJ would certainly be "of consequence in determining" whether McMillar possessed the S&W .40 pistol, as he is charged with doing.  *See* Fed. R. Evid. 401(b); *see also* doc. 3.  But JJ's October 20, 2018 text does not go to "the connection between the firearm charged . . . and McMillar."  Doc. 93 at 9. This text does not implicate the S&W .40 caliber pistol McMillar is charged with possessing *at all*.  "[T]he magazine JJ sought is not of the type that would fit the subject firearm."  Doc. 74 at 8.  JJ's text is about an accessory for different gun, a gun McMillar is not charged with possessing.  The Government's conclusory assertion that the text shows

"the relationship between subject firearm and McMillar" is not sufficient to actually establish that connection. *See* doc. 93 at 9-10. One person asking a second person to ask a third person to buy an accessory for a specific item does not make it more or less probable that the second person possessed a different item than the one for which the first person sought an accessory. *See* Fed. R. Evid. 401(a). Without more, JJ's text has no bearing on McMillar's possession of the S&W .40 caliber pistol, and therefore no bearing on any fact of consequence in determining this action. *See* Fed. R. Evid. 401(b). It is straightforwardly irrelevant. McMillar's motion *in limine* to exclude the text message is **GRANTED** under Rule 401. Doc. 91, in part.

## III.   CONCLUSION

McMillar's Motion to Dismiss should be **DENIED**. Doc. 72. His motion *in limine* is **DENIED** insofar as he seeks to exclude eye-witness testimony that he previously possessed firearms. Doc. 91, in part. The motion *in limine* is **GRANTED** as to JJ's October 20, 2018 text. Doc. 91, in part. The text is irrelevant and therefore inadmissible under Rule 401.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and

this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 20th day of May, 2024.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA