UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CR423-090 |
| | ) | |
| VICTOR R. MCMILLAR, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

A Smith and Wesson ("S&W") .40 caliber pistol and Browning brand .40 caliber ammunition were used in a November 3, 2018 homicide. *See* doc. 49 at 1-2 (Bill of Particulars). Two days later, on November 5, 2018, the same S&W .40 caliber pistol and Federal brand .40 caliber shells were recovered at another homicide scene. *Id.* Defendant Victor R. McMillar is charged with two counts of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). *See* doc. 3 (Indictment). The Government alleges McMillar possessed the S&W .40 caliber pistol, Browning brand .40 caliber ammunition, and Federal brand .40 caliber ammunition connected to the November 3 and November 5, 2018 homicides. *See id.*; *see generally* doc. 49 (Bill of

1

Particulars); *see also* doc. 81 at 3 ("McMillar is charged in the instant case with unlawfully possessing subject firearm as well as the ammunition found at the November 3 (count 1) and November 5 (count 2) shooting scenes . . . .").

McMillar moved to exclude two October 20, 2018 text messages from "JJ", the November 5th homicide victim, to McMillar. Doc. 91, in part. The Court granted the motion,[1] finding that the text messages were irrelevant and therefore inadmissible. Doc. 97 at 26. The Government objected to the Order, arguing that the Court applied "too narrow a view of relevance under the Federal Rules of Evidence and Eleventh Circuit precedent." Doc. 103 at 8. The Government also included new arguments for the texts' relevancy that had not been briefed before the undersigned, informed the Court that the evidence was still "in flux" and that additional arguments for the texts' admissibility may be forthcoming based on potential new evidence, and requested that "the Court reserve

---

[1] In the same Order, the Court rejected McMillar's arguments that texts were inadmissible hearsay and denied his motion to exclude testimony from a witness who had seen McMillar with different firearms than the one he is charged with possessing in the months leading up to the November 3rd and November 5th shootings. *See* doc. 97 at 16-27; *see generally* doc. 91. The Court is not revisiting these issues. *See* doc. 108 at 4 (vacating the Order only in so far as the undersigned found that the October 20, 2018 text messages were irrelevant).

its decision on the relevancy of the October 20, 2018, text messages until trial, when the United States will be able to address any arguments by the Court and the defense with finality." *See id.* at 15-18, 20 n.11.

Because the Government presented new evidence and arguments in opposition to the motion *in limine* and suggested that additional evidence and arguments could be forthcoming, the District Judge vacated the undersigned's Order in so far as it granted the motion *in limine* to exclude the texts on relevancy grounds. Doc. 108 at 4. The District Judge also referred the revived motion for a hearing. *Id.* Accordingly, on July 23, 2024, the undersigned conducted a hearing on McMillar's revived motion *in limine* to determine the admissibility of the October 20, 2018 texts. *See* doc. 110 (Minute Entry). The Court took the revived motion *in limine*, *see* doc. 91, in part, under advisement, *see* doc. 110 (Minute Entry).

### I.   FACTS

On October 18, 2022, JJ texted McMillar: "Man plz go head and get yo girl tew order da pro meg xd 40." Doc. 74 at 6; *see also* doc. 110-2 at 5. This was immediately followed with a link to a specific magazine from "gunmagwarehouse.com." Doc. 74 at 6; *see also* doc. 110-2 at 6. Later

that day, JJ added a new contact to his phone: "Brit." Doc. 110-2 at 8. "Brit" is common nickname for someone with McMillar's girlfriend's first name; the Government refers to her by her initials, "BR". The Government asserts that the magazine JJ wanted McMillar's "girl"—who it contends is BR—to buy is compatible with a Springfield Armory XD .40 caliber pistol. *See* doc. 110 (Minute Entry); *see also* doc. 103 at 17.

On October 22, 2018, at 9:32 PM, photos of six different firearms were uploaded to McMillar's iCloud account. Doc. 110-3 at 67-70. The photos were taken by an iPhone SE. *Id.* at 70. The Savannah Police Department ("SPD") documented and retrieved an iPhone SE from the November 3rd homicide scene. Doc. 110-2 at 36-38. The shooting took place at approximately 11:00 PM, and at 11:37 PM, a phone belonging to BR began searching for ways to "erase" or "lock" an iPhone. *Id.* at 32. At approximately midnight, BR's phone sent McMillar's Apple ID login information to another number. *Id.* at 40. Apple later contacted McMillar regarding a "recovery request" made on November 4, 2018, at 1:05 AM that listed BR's phone number as the contact phone number for account recovery. Doc. 110-3 at 65. At the hearing, the Government argued this activity showed that BR was assisting McMillar in his

4

attempt to wipe the iPhone he accidentally left at the scene. The Government asserts that this evidence tends to show that McMillar possessed an iPhone SE prior to and during the November 3rd shooting and, therefore, that *his* phone–an iPhone SE–was used to take the photos uploaded to his iCloud account on October 22nd.

Photos taken during a search of BR's apartment appear to support the Government's contention that the photos of firearms on McMillar's iCloud account where taken in BR's apartment; the floor tiles, color of the couch, and color and design of the couch cushion visible in the October 22, 2018 firearms photos match the floor tiles, couch color, and color and design of the couch cushions visible in photos taken by SPD on December 17, 2018. *Compare* doc. 110-2 at 10-11 *with* doc. 110-3 at 67-69. The Government submits that BR and McMillar shared the apartment because SPD recovered McMillar's driver's license, social security card, and birth certificate during the search. *See* doc. 110-2 at 17, 21-22. SPD also recovered 9mm ammunition in BR's couch cushions, *id.* at 11-13, and an empty magazine for 9mm ammunition in the cabinets above her stove, 14-16.

At the hearing, the Government proffered that ATF had identified one of the firearms in the photos as a Springfield Armory XD .40 caliber pistol–the gun compatible with the magazine JJ asked about. The Springfield Armory pistol's serial number is visible in the photographs. *See* doc. 110-3 at 67 (identifying the firearm at the bottom of the photograph as the Springfield Armory XD .40 caliber pistol). Using the serial number, the Government was able to connect that exact firearm to twelve different shootings that had taken place between March 2013 and June 2019, mostly in the Savannah area. Authorities recovered the firearm in 2019. The Government submitted that the specific Springfield Armory firearm pictured the October 22nd photos was used in a shooting in Savannah approximately 2 hours after the photos were uploaded to McMillar's iCloud account. At 4:31 AM the next morning, JJ sent a screenshot of a news article about that very same shooting to McMillar and a message for him to "[w]ake up." Doc. 110-2 at 6.

The Government also proffered that it had identified one of the other guns in the photographs as a S&W .40 caliber pistol–the kind of gun McMillar is charged with possessing. *See* doc. 3. While it cannot discern a serial number from the photos, the Government has pointed to

6

the visual similarities between the gun in the October 22nd photos and the gun recovered from JJ's body at the November 5, 2018 homicide scene. *Compare* doc. 110-3 at 67-69 *with id.* at 72.

Furthermore, while the Government has not presented evidence that either BR or McMillar's phone searched for the specific magazine JJ requested in the October 18, 2022 text messages at issue, BR's phone searched for places to buy guns in Savannah on September 29, 2018. *See* doc. 110-2 at 26. BR's phone also searched for two different kinds of magazines on November 1, 2018: a magazine for a "s&w sd 40" and a "50 round drum for a m&p 9mm." *Id.* at 24-26. The "s&w sd 40" is the same kind of firearm as the S&W .40 caliber pistol McMillar is charged with possessing. *See* doc. 103 at 16. BR's phone placed an order on "cheaperthandirt.com," a discount website for purchasing firearms, ammunition, and related accessories, on November 3, 2018. *See* doc. 110-2 at 28-29. While the Government cannot say what, exactly, was purchased, the $39.92 purchase is consistent with a firearm magazine. *See id.* at 29; *see also* doc. 93 at 12. Investigators also found a screenshot of the order confirmation from cheaperthandirt.com on BR's phone. *See* doc. 110-2 at 28.

In its Order excluding the October 20, 2018 texts, the Court found that the texts were not relevant "[w]ithout more." Doc. 97 at 26. The Government contends that the above evidence is that "more." The text messages, the Government urges, are relevant to explaining the relationship between JJ, BR, and McMillar–namely, that they all operated together, knowing that the others could get firearms or firearms accessories. *See* doc. 110 (Minute Entry). Because the texts are relevant, the Government argues that the October 20, 2018 messages are admissible. McMillar argues that the text messages are irrelevant because they do not show that he engaged in any illegal activity. *See* doc. 91 at 2; *see also* doc. 110 (Minute Entry). Even if the texts were not irrelevant, McMillar argues, they would be inadmissible under Rule 403 of the Federal Rules of Evidence because evidence that JJ asked McMillar to ask his girlfriend to purchase an accessory to a gun McMillar is not charged with possessing would confuse the issues and be more prejudicial than probative. *See* doc. 91 at 2, *see also* doc. 110 (Minute Entry)

## II.   ANALYSIS

### i. Relevance

"The starting place for admissibility is relevance." *United States v. McGregor*, 960 F.3d 1319, 1323 (11th Cir. 2020). Evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002).

The Government argued at the hearing that JJ's October 20, 2018 request to McMillar to have BR buy a magazine for a Springfield Armory XD .40 pistol, when considered together with the new evidence presented to the Court, demonstrates the relationships between JJ, BR, and McMillar and between JJ, BR, McMillar, and firearms or firearm accessories. Specifically, the Government argued that the texts and other evidence show that JJ, BR, and McMillar "all operate[d] together knowing that the other can get gun magazines." JJ knew that he could ask McMillar to have BR to purchase a magazine, and did so on October 20, 2018. *See* doc. 110-2 at 5-6. JJ added BR as a contact in his phone

9

the next day. *Id.* at 8. In the period leading up to the November 3rd and November 5th shootings, BR searched for and purchased firearms accessories. *See id.* at 24-26. She previously searched for places in Savannah that sold guns. *Id.* at 26. Firearms accessories and ammunition were eventually found in the home she and McMillar allegedly shared. *Id.* at 11-18. On October 22, 2018, there were at least six firearms in McMillar and BR's home. *See* doc. 110-3 at 67-69. Among those six firearms was a Springfield Armory XD .40–the same kind of gun JJ had asked McMillar to ask BR to buy a magazine for two days earlier. Two hours after a photo of the Springfield Armory XD .40 JJ wanted a magazine for was uploaded to McMillar's iCloud account, that exact gun was used in a shooting in Savannah. Hours after the shooting, JJ texted McMillar a news article about the incident. Doc. 110-2 at 6. A S&W .40 caliber pistol was also in McMillar and BR's home on October 22nd–and one was recovered from JJ's body at the scene of the November 5th homicide. *See* doc. 110-3 at 67-69; *see also* doc. 93 at 9 (indicating that the subject firearm was "found on JJ's body").

The October 20, 2018 texts, when considered with the other evidence presented by the Government, tend to show that McMillar, BR,

10

and JJ were interconnected, and that information about firearm accessories, firearms accessories themselves, and firearms likely passed between the three of them. This is relevant to the Government's theory that JJ and McMillar jointly possessed the S&W .40 caliber pistol recovered from JJ's body at the November 5, 2018 homicide scene. *See* doc. 93 at 9-10. The Government also argues that the text messages, in conjunction with other evidence, suggest that JJ was comfortable with McMillar having a firearm. *See* doc. 110 (Minute Entry). JJ was armed the night he was murdered, but did not take his gun out of his waistband or fire a shot. At the hearing, the Government theorized that this means that JJ knew the person who shot him with Federal brand ammunition and that JJ was familiar enough with his attacker and the idea that his attacker might be armed that seeing that person with a gun did not lead JJ to draw his own weapon. The text messages, as evidence that BR, JJ, and McMillar may have exchanged firearms accessories and firearms, are relevant to this theory as well.

Given the additional evidence and explanation provided at the July hearing, the Court finds that the Government has connected the text message to "fact[s] . . . of consequence in determining [this] action." *Cf.*

Fed. R. Evid. 401. Accordingly, the Court finds that the October 20, 2018 text messages are relevant. The texts are therefore admissible unless they should be excluded under Rule 403. *See* Fed. R. Evid. 402.

### ii. Rule 403

Under Rule 403, the Court may exclude otherwise admissible evidence if the "probative value" of the evidence is "substantially outweighed by the danger of unfair prejudice[ or] confusing the issues. . . ." Fed. R. Evid. 403. "[B]ecause it permits a trial court to exclude concededly probative evidence, Rule 403 is an extraordinary remedy which should be used sparingly." *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983) (internal quotations and citation omitted). In general, the Court "must 'look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014) (quoting *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010)). The balance under Rule 403 should generally be struck in favor of admission. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).[2] McMillar, as the moving party, "has the burden

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh

of proving that the evidence sought to be excluded is inadmissible." *United States v. Oury*, 568 F. Supp. 3d 1380, 1385 (S.D. Ga. 2021) (internal quotations and citation omitted).

All relevant evidence in a criminal case is inherently prejudicial to some extent; "it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." *King*, 713 F.2d at 631 (emphasis in original). "'[U]nfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

McMillar argues that the October 20, 2018 text messages should be excluded under Rule 403 because they bear on JJ and BR's possible conduct, not McMillar's, *see* doc. 91 at 2, and the text messages would "bring all of these other things" into the case, *see* doc. 110 (Minute Entry). The texts are a request from JJ for BR to purchase a firearm accessory which McMillar could legally possess, for a gun he is not charged with

---

Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

possessing. *See* doc. 93 at 12 (acknowledging that the magazine, if McMillar had it, would be "legally possessed"); *see also* 18 U.S.C. § 921(a)(17)(A) (defining "ammunition" as "ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm"); 18 U.S.C. § 922(g)(1) (prohibiting convicted felons from possessing "any firearm or ammunition"); *cf. United States v. Ochoa*, 941 F.3d 1074, 1082-83 (11th Cir. 2019) (acknowledging that "ammunition" is distinct and can be separate from magazines). The probative value of the texts, McMillar argues, are therefore substantially outweighed by the danger of unfair prejudice and confusing the issues. *See* doc. 91 at 2; doc. 110 (Minute Entry).

McMillar has not demonstrated how the October 20, 2018 text messages would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. Indeed, it seems as though the texts have only a minimal, if not *de minimis*, potential for undue prejudice or confusing the issues. As McMillar points out, the text messages themselves indicate, at most, that McMillar may have connected JJ and BR so BR could fulfill JJ's request. And it was legal for both JJ and McMillar to possess an unloaded

14

magazine. Alone, the text messages do not suggest any kind of wrongdoing on McMillar's part. When considered together with the evidence presented at the July 23, 2024 hearing, *see* doc. 110 (Minute Entry), the texts play an important role in establishing the interpersonal relationships between JJ, BR, and McMillar, and how firearm accessories–and possibly firearms themselves–may have changed hands within the group. Thus, the texts' probative value outweighs the potential for undue prejudice or confusing the issues. *See* Fed. R. Evid. 403. Even if the text messages posed a more than minimal risk of prejudice or confusion, a limiting instruction would reduce such risks. *See United States v. Harris*, 270 F. App'x 987, 989 (11th Cir. 2008).

Viewing the evidence in the light most favorable to admission, *see Aycock*, 769 F.3d at 1069, the Court finds that McMillar has not carried his burden to show that the October 20, 2018 text messages are inadmissible, *see Oury*, 568 F. Supp. 3d at 1385. For the reasons stated above, McMillar's arguments that the texts would create undue prejudice or confuse the issues fail. The October 20, 2018 text messages, as relevant evidence, are admissible. *See* Fed. R. Evid. 402. McMillar's

motion *in limine* to exclude the October 20, 2018 text messages is **DENIED**. Doc. 91, in part.

### III. CONCLUSION

For the reasons stated above, McMillar's motion *in limine* to exclude the October 20, 2018 text messages is **DENIED**. Doc. 91, in part.

The District Judge noted in his June 26, 2024 Order that "upon resolution of the motion *in limine*, the Court may set a trial at any time–even if the United States' evidence is still 'in flux.'" Doc. 108 at 5. At the hearing, the Government represented that it was still gathering evidence in this case, but that it would be ready to be proceed to trial at any time with the evidence already in its possession. McMillar's counsel represented that she was also ready to proceed to trial.

**SO ORDERED**, this 31st day of July, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA